**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| WENDY MURPHY | ) |
|  | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) Civil Action No. 12-864(EGS) |
| v. | ) |
|  | ) |
| LIVINGSOCIAL, INC. and | ) |
| SETH BROWN, | ) |
|  | ) |
| Defendants. | ) |
| | ) |

<u>**MEMORANDUM OPINION**</u>

Pending before the Court is defendants' motion to dismiss Count IV of plaintiff's amended complaint.  Upon consideration of the motion, the response and reply thereto, the entire record, and for the reasons explained below, defendants' motion is **GRANTED**.

**I.   BACKGROUND**

Plaintiff Wendy Murphy is resident of the State of Illinois.  Amend. Compl. ("Compl.") ¶ 1.  Defendant LivingSocial, Inc. ("LivingSocial") is a Delaware corporation with its principal place of business in Washington, D.C.  Compl. ¶ 2.  LivingSocial operates a group buying website wherein it sells vouchers to people for use at local businesses, for vacations and hotel rooms, and for other excursions.  Compl. ¶ 10.  Defendant Seth Brown is employed as an attorney for

LivingSocial and works in its Washington, D.C. office. Compl. ¶ 3.

On November 5, 2010, plaintiff was offered a position of Marketing Consultant at LivingSocial.  Compl. ¶ 13.  The offer letter, which was signed by plaintiff on November 6, 2010, includes a choice of law clause, which states that "[r]egardless of where you live, District of Columbia law shall apply to this Agreement and to your employment by the Company.  Choice of law rules that might otherwise cause the application of any other law shall not apply."  Compl. Ex. 1 ("Employment Agreement"), ¶ 9.  The Employment Agreement also incorporates by reference an attachment titled "Confidentiality, Intellectual Property Noncompetition Agreement" (the "Non-Compete Agreement").  The Non-Compete Agreement restricts plaintiff's ability to compete with LivingSocial in the event of plaintiff's termination of employment by prohibiting her from sharing confidential information, soliciting LivingSocial clients, and soliciting LivingSocial employees to work elsewhere for certain periods of time following plaintiff's employment.  The Employment Agreement states that plaintiff's "obligations under . . . the [Non-Compete Agreement] shall survive the termination of [plaintiff's] employment."  Employment Agreement at ¶ 9.  The Non-Compete Agreement states that plaintiff "agrees that following [plaintiff's] employment with the Company, the Company

2

shall have the right to communicate the terms of this Agreement to any prospective or current employer of Employee.  Employee waives the right to assert any claim for damages against Company or any officer, employee or agent of the Company arising from such disclosure of the terms of this Agreement."  Non-Compete Agreement, ¶ 6(b).

Plaintiff resigned from LivingSocial effective March 1, 2012.  On March 6, 2012, LivingSocial sent plaintiff a letter reminding her of her obligations under the Non-Compete Agreement.  Compl. Ex. 2.  The letter set forth plaintiff's obligations under her Employment Agreement and demanded that plaintiff stop immediately "any and all activities that violate the terms" of the Non-Compete Agreement.  The letter stated LivingSocial's understanding that plaintiff intended to begin employment with a direct competitor of LivingSocial, Travelzoo, Inc. ("Travelzoo").

On March 21, 2012, defendant Seth Brown, Head of Litigation at LivingSocial, sent another letter to plaintiff.  Compl. Ex. 3.  In the letter, Brown states that the Director of Human Resources at Travelzoo had recently solicited one of LivingSocial's lead sales representatives to discuss job opportunities at Travelzoo.  Brown stated that he suspected plaintiff may have shared information with Travelzoo in violation of the Non-Compete agreement, and demanded that she

cease and desist all solicitation of LivingSocial employees, customers, or prospective customers.  The letter further stated that LivingSocial was considering taking legal action against plaintiff to protect its interests.

Also on March 21, 2012, Brown sent a letter to Travelzoo's Human Resources Director, Kaity Benedicto, regarding the solicitation of the LivingSocial sales representative.  Compl. ¶ 70 & Ex. 4 ("Travelzoo Letter").  The Travelzoo Letter outlined plaintiff's continuing obligations under the Non-Compete Agreement and demanded that Travelzoo cease and desist further solicitation of LivingSocial employees, customers, or prospective customers.  The Travelzoo Letter is the subject of Count IV and defendants' motion to dismiss.

On March 26, 2012, plaintiff filed a complaint against LivingSocial in the Northern District of Illinois, alleging claims for breach of contract and violation of the Illinois Wage Payment and Collection Act, and seeking a declaratory judgment. On April 11, 2012, plaintiff filed an amended complaint, adding Seth Brown as a defendant and adding a claim of libel *per se* against both defendants.  On May 11, 2012, Judge Rebecca R. Pallmeyer construed defendants' motion to dismiss as a motion to transfer the case, and ordered that the case be transferred to this Court in view of the parties' forum selection clause.

4

On June 6, 2012, defendants filed a motion to dismiss Count IV of the complaint for failure to state a claim for which relief may be granted.  The motion is now ripe for the Court's decision.

## II.  STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint.  *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citations omitted). While detailed factual allegations are not necessary, plaintiff must plead enough facts "to raise a right to relief above the speculative level."  *Id.*

When ruling on a Rule 12(b)(6) motion, the Court may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002). The Court must construe the complaint liberally in plaintiff's favor and grant plaintiff the benefit of all reasonable inferences deriving from the complaint.  *Kowal v. MCI Commc'ns*

*Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).   However, the Court must not accept plaintiff's inferences that are "unsupported by the facts set out in the complaint." *Id*.   "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

## III. DISCUSSION

### a. Choice of Law

As an initial matter, the parties disagree as to whether District of Columbia or Illinois law applies to plaintiff's claims.   As discussed above, the Employment Agreement expressly provides that "[r]egardless of where [plaintiff] lives, District of Columbia law shall apply to this Agreement and to [plaintiff's] employment by the Company.   Choice of law rules that might otherwise cause the application of any other law shall not apply."   Employment Agreement ¶ 9.

Under District of Columbia law, courts will give effect to a contractual choice of law clause as long as there is some reasonable relationship with the state specified.   *Gray v. Am. Exp. Co.*, 743 F.2d 10, 17 (D.C. Cir. 1984); *see Ladd v. Chemonics Intern., Inc.*, 603 F. Supp. 2d 99, 115 n.11 (D.D.C. 2009) (applying District of Columbia law where defendant's principal place of business was in the District and the employment agreement specified that District of Columbia law would apply).   Here, defendant LivingSocial is headquartered in

the District of Columbia.  Accordingly, the Court finds that the choice of law clause has a reasonable relationship with the District of Columbia.

The cases cited by plaintiff do not compel a different result.  Plaintiff argues that District of Columbia choice of law principles should be applied and the Court should consider whether Illinois or the District of Columbia has a greater interest in the dispute.  Pl.'s Opp. to Defs.' Mot. to Dismiss at 3.  Plaintiff's argument ignores the fact that her Employment Agreement contains a choice of law clause that expressly states that "[c]hoice of law rules that might otherwise cause the application of any other law shall not apply."  Employment Agreement ¶ 9.  Plaintiff does not argue that the choice of law clause is invalid or ambiguous.  Accordingly, the Court will apply District of Columbia law.

Plaintiff also argues that the choice of law clause is inapplicable to the libel claim against Brown for two reasons. First, plaintiff argues that the alleged tort did not "arise from plaintiff's employment."  Pl.'s Opp. at 5.  Plaintiff argues that "[l]iability for tortious conduct that occurs after termination of plaintiff's employment is not addressed at all" in the Employment Agreement. *Id*.  This argument fails. Plaintiff's libel claim rests solely on a letter sent to plaintiff's current employer regarding plaintiff's alleged

contractual obligations to LivingSocial under the Non-Compete
Agreement.  The Employment Agreement, which incorporates the
Non-Compete Agreement by reference, expressly states that
plaintiff's obligations under the Non-Compete Agreement would
survive the termination of her employment.  The Court finds,
therefore, that plaintiff's libel claim is inextricably
intertwined with, and arises out of, plaintiff's employment with
LivingSocial.

Plaintiff also argues in a footnote that the choice of law
clause does not apply to Brown because he was not a party to the
Employment Agreement.  Plaintiff cites no case law in support of
this argument, which was made in a footnote.  Courts need not
resolve arguments raised in a cursory manner and with only the
most-bare bones arguments in support.  *See Doe v. Siddig*, 810 F.
Supp. 2d 127, 137-38 (D.D.C. 2011) (citing *Wash. Legal Clinic
for the Homeless v. Barry*, 107 F.3d 32, 39 (D.C. Cir. 1997)).
In any event, plaintiff's argument lacks merit.  When writing
the letter, Brown was acting as an agent of LivingSocial, and
plaintiff makes no serious attempt to argue otherwise.
Accordingly, the choice of law clause also applies to
plaintiff's claims against Brown.

### b. Plaintiff's Libel *Per Se* Claim

In Count IV of the complaint, plaintiff alleges that the
Travelzoo Letter falsely accused plaintiff of violating the Non-

8

Compete Agreement.  Compl. ¶ 73-74.  Plaintiff argues that the letter "falsely impute[s] an inability to perform or want of integrity by Plaintiff in the discharge of her employment and [is] defamatory *per se*."  Compl. ¶ 75.  Plaintiff further contends that Brown, in drafting the letter, acted with actual malice and caused harm to plaintiff's professional reputation. Compl. ¶ 76-78.

Libel is a type of defamation in which the allegedly defamatory statement is written.  *See Ning Ye v. Holder*, 644 F. Supp. 2d 112, 117 (D.D.C. 2009).  Under District of Columbia law, to state a claim for defamation, plaintiff must allege (1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at least negligence; and (4) that the statement was either actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm. *Franklin v. Pepco Holdings, Inc.*, 875 F. Supp. 2d 66, 74 (D.D.C. 2012) (citing *Jankovic v. Int'l Crisis Group*, 494 F.3d 1080, 1091 (D.C. Cir. 2007)). Plaintiff's claim fails the second prong of this test.[1]

---

[1] Because the Court finds that plaintiff has failed to state a claim because the allegedly defamatory statements were

i.  The Statements Are Privileged

Defendants argue that the allegedly defamatory statements in the Travelzoo Letter are protected by an absolute privilege because they were made in anticipation of litigation.

> An attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding.

Restatement (Second) of Torts § 586 (1977); *see Oparaungo v. Watts*, 884 A.2d 63, 79 (D.C. 2005) (recognizing that the District of Columbia has adopted Section 586).[2]  "Despite its name, the judicial proceedings privilege does not protect only statements that are made in the institution of a lawsuit or in the course of litigation." *Finkelstein, Thompson & Loughran v. Hemispherx Biopharma, Inc.*, 774 A.2d 332, 341 (D.C. 2001) *overruled in part on other grounds by McNair Builders, Inc. v. Taylor*, 3 A.3d 1132 (D.C. 2010).  Rather, the privilege can extend to "statements that are made prior to the commencement of litigation, for instance, 'in . . . communications preliminary

---

privileged, the Court does not reach defendants' alternative arguments that the statements were not false or were not defamatory.
[2] Even if Illinois law were to apply in this case, Section 586 has also been adopted by courts in that state, *see Thompson v. Frank*, 313 Ill. App. 3d 661, 664 (3d Dist. 2000), and Illinois courts have recognized that the privilege applies to statements made in anticipation of litigation, *see Atkinson v. Afftonti*, 369 Ill. App. 3d 828, 833 (1st Dist. 2006).  Accordingly, plaintiff's claims would also fail under Illinois law.

to the proceeding.'" *Id.* (quoting Restatement § 586 cmt. a).
"[A]n actual outbreak of hostilities is not required, so long as
litigation is truly under serious consideration and the
communications in issue bear a sufficient relationship to that
potential litigation." *Finkelstein*, 774 A.2d at 343; *see Am.
Petrol. Inst. V. Technomedia Int'l, Inc.*, 699 F. Supp. 2d 258,
268 (D.D.C. 2010) (dismissing defamation claim based on letter
regarding alleged violation of non-disclosure agreement because
the letter "raised the specter of future litigation"); *Messina
v. Krakower*, 439 F.3d 755, 760 (D.C. Cir. 2006) (affirming
dismissal of defamation claim where letter defined the nature of
the dispute between the parties and alerted the recipient to a
potential legal claim).

Here, the Travelzoo Letter was written by LivingSocial's
attorney, advised Travelzoo of plaintiff's contractual
obligations, explained that plaintiff's actions appeared to have
been taken in violation of the contract, stated that
LivingSocial reserved its rights "to take all legal and
equitable action to protect its business interests," and
demanded that Travelzoo "immediately cease and desist from any
further solicitation of LivingSocial employees, customers, or
prospective customers." Compl., Ex. 4. The Court finds that
the statements in the letter indicate that litigation was under
serious consideration. Furthermore, the statements in the

letter bear a clear relationship to the dispute because they defined the nature of the dispute.  Accordingly, the Court finds that the Travelzoo Letter is protected by the judicial proceedings privilege.[3]

Plaintiff's claim also fails because the statements in the letter are protected by the privilege of consent.  *See Farrington v. Bureau of Nat'l Affairs, Inc.*, 596 A.2d 58, 59 (D.C. 1991) ("Consent is an absolute defense to a claim of defamation.").  The publication of a defamatory statement is privileged if "(1) there was either express or implied consent to the publication; (2) the statements were relevant to the purpose for which consent was given; and (3) the publication of those statements was limited to those with a legitimate interest in their content."  *Id.*

The Non-Compete Agreement contains an express provision by which plaintiff consented to LivingSocial's communicating the terms of the Non-Compete Agreement "to a prospective or current employer" of plaintiff.  Non-Compete Agreement at ¶ 6(b).  The statements made in the letter, alleging plaintiff had violated the restrictive covenants of the Non-Compete Agreement, were directly relevant to the purpose for which consent was given.

---

[3] Indeed, plaintiff's argument that the letter was not sent in anticipation of litigation is belied by the fact that she filed this lawsuit on March 26, 2012, only five days after the date of the letter.

Finally, the publication of the statement was limited to Travelzoo's human resources director, who had a legitimate interest in the content of the statements.  Accordingly, the letter is protected by the privilege of consent, and plaintiff's claim fails.

**IV.   CONCLUSION**

For all of the foregoing reasons, defendant's motion to dismiss Count IV of plaintiff's complaint is **GRANTED** and Count IV is hereby **DISMISSED**.  An appropriate Order accompanies this Memorandum Opinion.

**Signed:**      **Emmet G. Sullivan**
                 **United States District Judge**
                 **March 18, 2013**